✓ FILED
___ LODGED
___ RECEIVED

**November 10, 2009**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re: | Case No. 08-44279 |
| MARRIANE CHERYL GOUDE, | |
| Debtor. | |
| KATHRYN A ELLIS, Trustee of the Estate of Marriane Goude, | Adversary No. 09-04057 |
| Plaintiff, | **MEMORANDUM DECISION** |
| v. | |
| LEGACY GROUP LENDING INC., a Washington Corporation, fdba FIRST INDEPENDENT MORTGAGE COMPANY; and HARTFORD FIRE INSURANCE COMPANY BOND NO. 83BSBEF4343, | **NOT FOR PUBLICATION** |
| Defendants. | |

This matter came before the Court on October 29, 2009, on cross-motions for summary judgment filed by the Chapter 7 Trustee (Trustee) for the bankruptcy estate of Marianne Goude (Debtor) and Legacy Group Lending Inc., fdba First Independent Mortgage Company, and Hartford Fire Insurance Company (Defendants). Based on the pleadings and arguments presented, the Court makes the following findings of fact and conclusions of law:

MEMORANDUM DECISION - 1

In late 2007, the Debtor and her partner applied to refinance their home located at 11116 12th Ave Court NW, Gig Harbor, Washington (Property). Legacy Group Lending Inc. (Legacy), formerly known as First Independent Mortgage Company, was engaged as a mortgage broker for the refinance.

Legacy brokered a loan on the Property for the Debtor and her partner through Washington Mutual, which has since been purchased by JPMorgan Chase. A Good Faith Estimate prepared by Legacy dated December 19, 2006, and signed on January 19, 2007, indicated a total loan amount of $146,000 with an interest rate of 8.85%. No loan fees were disclosed on this Good Faith Estimate. A Truth-In Lending Disclosure Statement prepared by Legacy on December 19, 2006, and signed on the same date, indicated a loan with an amount financed of $785,193.56 and Annual Percentage Rate (APR) of 1.041%. A Good Faith Estimate prepared by Legacy on December 19, 2006, and signed on January 19, 2007, indicated a total loan amount of $790,000 with an interest rate of 1%. This Good Faith Estimate indicated a loan discount fee of $3,950, but did not disclose a mortgage broker fee. A Truth-In Lending Disclosure Statement prepared by Washington Mutual and dated January 18, 2007, shows an APR of 7.59520% and amount financed of $783,163.83, with a variable rate of interest. A Good Faith Estimate prepared by Washington Mutual, indicating a "Date Prepared" of January 11, 2007, disclosed a lender loan fee of $3,950 to be paid by Washington Mutual to Legacy and a Broker Origination Fee of $3,950.

The Debtor eventually obtained two loans on the Property, both financed by Washington Mutual and brokered by Legacy. A HUD-1 Settlement Statement dated January 25, 2007, indicated a loan amount of $790,000, and at line 808, a "Lender loan fee to Broker $3950 POC." Line 802 indicated a loan discount of $3,950. A second HUD-1 Settlement Statement dated January 25, 2007, indicated a second loan in the amount of $146,000. A Yield Spread Premium (YSP) in the amount of $3,950 was paid to Legacy in connection with these transactions, and Legacy received total fees of $7,900.

MEMORANDUM DECISION - 2

**1.  TILA**

The Trustee argues that Legacy violated the Truth in Lending Act (TILA) by failing to disclose the YSP in the Good Faith Estimates.  A yield spread premium "is a lump sum paid by a lender to a broker at closing when the loan originated by the broker bears an above-par interest rate." Schuetz v. Banc One Mortgage Corp., 292 F.3d 1004, 1007 (9th Cir. 2002).

TILA requires a written itemization of the amount of the finance charges paid to other parties by the creditor on the consumer's behalf and identification of such parties.  See 15 U.S.C. § 1601. Regulation Z sets forth the specific content and timing of the disclosures.  See 12 C.F.R. § 226.

The Trustee's claim for violation of TILA fails as a matter of law.  TILA requires a "creditor" to make certain disclosures to the borrower in connection with the extension of credit.  The term "creditor" is defined in 15 U.S.C. § 1602(f) as "a person who both (1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable."    The majority of case law written on this issue clearly holds that a party must satisfy both requirements of § 1602(f) to be classified as a creditor for purposes of TILA. See Cetto v. LaSalle Bank Nat'l Ass'n, 518 F.3d 263, 269-70 (4th Cir. 2008) (mortgage broker does not qualify as a creditor under TILA, and further holding that the last sentence of § 1602(f) does not provide a stand-alone alternative definition of "creditor"); Robey–Harcourt v. BenCorp Fin. Co., 326 F.3d 1140, 1142 (10th Cir. 2003); Madrigal v. OneWest Bank, 2009 WL 3415387, at *1-2 (N.D. Cal. Oct. 21, 2009).  It is undisputed that the debt at issue was initially payable to Washington Mutual, not Legacy.  Legacy merely served as the mortgage broker in this transaction.

Even if Legacy arguably met the definition of a "creditor" for purposes of TILA, an abundance of case law has recently been written on the issue of whether this statute even requires the separate disclosure of a YSP.  The majority of cases hold that TILA does not require a YSP to be separately disclosed as a finance charge on the good faith estimate because it is already a part of the interest

MEMORANDUM DECISION - 3

component.  See Hernandez v. Downey Savings and Loan Ass'n, 2009 WL 704381, at *8 (S.D. Cal. March 17, 2009); see also Escher v. Decision One Mortgage Co., 2009 WL 3127753, at *4-5 (E.D. Pa. Sept 29, 2009).  "[T]he Federal Reserve Board has clarified that fees paid 'to a broker as a yield spread premium that are already included in the finance charge, either as interest or as points, should not be double counted' on the TILA Disclosure Statement." Hernandez, 2009 WL 704381, at *8 (quoting 61 F.R. 26126, 26127 (1996)).  The rational behind these holdings is based on a recognition that the YSP is a component of interest due on the note and that the interest is disclosed as part of the finance charge which is set forth on the TILA Disclosure Statement.  Although the YSP increases the rate of interest, a lender is not required to break down the components of the finance charge to disclose the separate existence of the YSP as a component of the finance charge and TILA is complied with so long as it was disclosed on the HUD-1 Settlement Statement and the interest on the loan was disclosed on the TILA disclosure statement.  Escher, 2009 WL 3127753, at *5 (disclosure of additional broker commission of $2,385 at Line 811 on HUD-1 Settlement Statement with the acronym "PBL" (paid by lender) was sufficient).

In this case, it is undisputed that the fees at issue were disclosed at lines 802 and 808 of the HUD-1 Settlement Statement and there is no allegation that the interest on the loan was not disclosed on the TILA disclosure statement.  This fact is supported by the declaration of the Debtor's partner, in which she states that she recognized at the time that a lender loan fee was to be paid to the broker.  On the record provided, the Court concludes that the YSP was properly disclosed.  For each of the these reasons, including the fact that the one year statute of limitations on TILA claims would act as a bar as explained below, the Court concludes that the Trustee has failed to establish a TILA violation as a matter of law.  The Defendants are entitled to summary judgment on this claim.

**2.    RESPA**

The Trustee argues that Legacy also violated the Real Estate Settlement Procedures Act (RESPA) when it received a YSP of $3,950.  According to the Trustee, Legacy violated 12 U.S.C.

§ 2604(c) by failing to properly disclose the YSP prior to closing, and 12 U.S.C. § 2607 which prohibits kickbacks and unearned fees in mortgage loan transactions.

As a preliminary matter, the Defendants argue that summary judgment is appropriate on the RESPA claims because they are barred by the statute of limitations. 12 U.S.C. § 2614 provides for a one year statute of limitations on private RESPA causes of action. The statute of limitations runs from the day the loan documents are signed. Kamara v. Columbia Home Loans, LLC, 2009 WL 2230733, at *4 (E.D. Pa. July 24, 2009). The loan documents were signed in this case in January, 2007, and the complaint was not filed until April 23, 2009. The statute of limitations has therefore passed on the RESPA claims.

Despite the one year bar, the Trustee argues that the statue of limitations should be equitably tolled. Courts in the Ninth Circuit recognize that the doctrine of equitable tolling applies to RESPA claims. See Madrid v. J.P. Morgan Chase Bank, N.A., 2009 WL 3255880, at *3 (E.D. Cal. October 8, 2009).

The doctrine of equitable tolling may suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the RESPA claim. The Trustee has submitted a declaration from the Debtor indicating that she had no knowledge of the YSP prior to the investigation of the Trustee. The Trustee also argues that equitable tolling is appropriate in this case because Legacy destroyed its file regarding this transaction after receipt of the Trustee's initial demand letter regarding these claims.

The Court disagrees. The destruction of the file is irrelevant to the statute of limitations issue, because the file was destroyed after the statute of limitations on the RESPA claim had already expired. In addition, although the Debtor may have been unaware of a potential YSP claim prior to the Trustee's involvement, it is undisputed that this fee was disclosed on the closing documents. Thus, there is no dispute that the existence of the charge was disclosed at least as of closing. In this case, Line 808 of the HUD-1 Settlement Statement identified a "Lender Loan Fee to Broker $3950 POC." In Anderson v. Wells Fargo Home Mortgage, Inc., 259 F.Supp.2d 1143 (W.D. Wash. 2003), the U.S.

MEMORANDUM DECISION - 5

District Court determined on summary judgment that the disclosure of a YSP on the closing documents under the designation of "POC," without any credible claim that the movant was prevented from timely asserting her rights, forestalled the application of equitable tolling. Anderson, 259 F.Supp.2d at 1148-49. The RESPA claims are therefore barred by the statute of limitations entitling the Defendants to summary judgment.

Even though the RESPA claims are time barred, the Court recognizes that it must still determine whether a RESPA violation occurred in order to determine liability under the Mortgage Brokers Practices Act (MBPA). RCW 19.146.0201(11) provides that it is a violation of the MBPA for a mortgage broker to "[f]ail to comply with any requirement of the truth-in-lending act, 15 U.S.C. Sec. 1601 and Regulation Z, 12 C.F.R. Sec. 226; the real estate settlement procedures act, 12 U.S.C. Sec. 2601 and Regulation X." Therefore, if Legacy violated RESPA, there is an issue as to whether a violation occurred under the MBPA even if the RESPA claim is time barred.

The Trustee alleges that it was a violation of RESPA to fail to disclose the YSP prior to closing. Although 12 U.S.C. § 2604(c) of RESPA requires a lender to provide a borrower with a good faith estimate, courts uniformly recognize that this section, unlike other provisions of RESPA, does not authorize a private remedy. See, e.g., Collins v. FHMA-USDA 105 F.3d 1366, 1368, (11th Cir. 1997); Madrid, 2009 WL 3255880, at *3; Pagtalunan v. Reunion Mortgage Inc., 2009 WL 961995, at *3 (N.D. Cal. April 8, 2009).

The Trustee also alleges that Legacy violated 12 U.S.C. § 2607. The Ninth Circuit has adopted a two part test for determining whether payments from a lender to a mortgage broker are permissible under RESPA. First, the payment must be for goods actually furnished or services actually performed. Second, the payment must be reasonably related to the value of the goods actually furnished or services actually performed. Under the first prong, HUD considers payments to mortgage brokers justified if the broker takes the application information and performs at least five additional items specified in HUD's list of compensable services. Under the second prong, direct and indirect fees, including yield-spread premiums, are permissible if total compensation provided to the mortgage

MEMORANDUM DECISION - 6

broker is reasonable. See Reyes v. Premier Home Funding, Inc., 640 F.Supp.2d 1147, 1159 (N.D. Cal. 2009).

It is undisputed that Legacy received a YSP of $3,950 and total fees of $7,900. The Trustee alleges that the fee was not earned in that there is no evidence that Legacy provided any services to support this fee. According to the Trustee, there is no evidence that Legacy took any efforts to shop the loan, and they ultimately brokered a very poor loan for the borrowers with negative amortization. Legacy counters that this was a reasonable fee for services rendered and that the fee charged was customary for the industry. Legacy, however, failed to present any evidence from a person with personal knowledge of this transaction of the exact services provided. The Court concludes that the conflicting evidence presented raises an issue of fact as to whether the fee paid to Legacy was earned and reasonable as required by 12 U.S.C. § 2607.

**3.    Mortgage Broker Practices Act**

As there is an issue of fact as to whether a violation under 12 U.S.C. § 2607 occurred, it is inappropriate to grant summary judgment under RCW 19.146.0201(11) of the MBPA.

The Court, however, will grant the Defendants summary judgment on the Trustee's claim that the Defendants violated the disclosure requirements of RCW 19.146.030. RCW 19.146.030(2)(a) provides that "[d]isclosure in compliance with the requirements of the truth-in-lending act, 15 U.S.C. Sec. 1601 and Regulation Z, 12 C.F.R. Sec. 226, as now or hereafter amended, shall be deemed to comply with the disclosure requirements of this subsection." As stated above, it is not a violation of the TILA for a mortgage broker to fail to separately disclose a yield spread premium. Legacy therefore complied with the disclosure requirements of TILA. Accordingly, the Trustee has failed to establish a claim for non-disclosure under the MBPA.

At the hearing, the Trustee also argued that it was a violation of RCW 19.146.095(2) for Legacy to collect a fee without disclosing such fee prior to providing services. The Court disagrees. Initially, the Court notes that the Trustee is misreading the plain language of the statute. This section does not say that it is a violation of the MBPA to collect a fee without disclosing such prior to providing services.

MEMORANDUM DECISION - 7

Rather, the section states that a broker may collect a fee if such fees are disclosed. The Court has already ruled that the disclosures in this case were sufficient. In addition, the Trustee's interpretation is not logical. The amount of a YSP is based on the ultimate interest rate obtained for a borrower. It is impossible to determine this rate or even whether one will be charged (for instance a YSP would not be collected if the broker did the loan in-house), prior to some services being performed. Thus, the Court disagrees with the Trustee as a matter of law that it was a violation of RCW 19.146.095(2) for Legacy to not disclose the existence and amount of the YSP in advance of performing any services.

**4.   Consumer Protection Act**

As there is an issue of fact as to whether the MPBA was violated, there remains an issue of fact as to whether the Defendants' actions violated the Consumer Protection Act. RCW 19.146.100, RCW 19.86. Summary judgment is denied on this claim.

DATED:   November 10, 2009

_____
Paul B. Snyder
U.S. Bankruptcy Judge